

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MSA
F#2011R00230

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

September 19, 2012

**By ECF and Hand**

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:  United States v. Wendell Jenkins
             Criminal Docket No. 11-186 (FB)

Dear Judge Block:

      On January 4, 2012, the above-captioned defendant pled guilty to once count of conspiring to commit Hobbs Act robbery and one count of brandishing a firearm in connection with a crime of violence, respectively in violation of 18 U.S.C. §§ 1941(a) and 924(c)(1)(A)(ii).  Sentencing is scheduled for September 19, 2012.[1]  The government respectfully submits the following with respect to sentencing.

A.    The Offense

      The defendant pled guilty to conspiring to carjack a mother (victim #1) who was waiting with her young child in a McDonald's drive-through, and carjack and abduct a gentleman

---

    [1]    At a status conference held on September 14, 2012 in this matter, the Court expressed concern about the length of time that elapsed since the defendant's guilty plea, and ordered that sentencing occur on September 19, 2012.  The government respectfully notes that it had been its understanding, confirmed during conversations with defense counsel and the Probation Department, that the defendant would not proceed to sentencing until the conclusion of his co-defendant's trial, which is currently scheduled for November 19, 2012.

(victim #2) from his driveway, both on February 8, 2011, in Queens, New York. During the first incident, the defendant and co-defendant Thomas Harris approached victim #1 and opened her car door. Harris attempted to pull victim #1 out of her car, while the defendant attempted to enter the rear seat of the vehicle, where victim #1's child was sitting. Victim #1 screamed, and at the same time accidentally removed her foot from the brake pedal of her automobile. The car lurched forward, striking the car in front victim #1, and the defendants fled.

Approximately 30 minutes later, a short distance from the first incident, the defendants approached a 61 year-old male victim (victim #2) in his driveway, brandished a firearm and instructed him to open the door to his home. When the man protested that his sick wife was inside and that he had nothing of value, the defendants forced him into his car at gunpoint. The defendants demanded victim #2's ATM card and personal identification number and instructed him to drive to the bank. When they arrived at the bank, Harris remained in the car with victim #2 while the defendant used victim #2's ATM card to withdraw cash from an ATM. Just as the defendant completed the withdrawal, police who were canvassing the area with victim #1 saw the defendant. The defendant fled, dropping victim #2's ATM card and cash as he ran, but was apprehended after a short chase. At the time of his arrest, the defendant possessed a gun holster.

B.   Relevant Conduct

The above incidents were part of a pattern of carjackings and abductions in Brooklyn and Queens, New York between April 2010 and February 2011. In addition, during the same period, the defendants committed an armed home-invasion robbery during which a family of victims were restrained and held at gunpoint while the defendants stole their property.[2]

Following his arrest in the instant matter, the defendant was identified in a lineup by the victim of an abduction and robbery that occurred on April 14, 2011, at 182-27 Grand Central Parkway, in Queens, New York. The 66 year-old female victim ("victim #3") reported that, at approximately 11:00 p.m. that night, she was walking from her garage to her front door when the defendant and two other men approached. One of the men held her around the neck in a "choke hold." One of the

---

[2]   After several victims identified the defendant in a lineup, he was indicted in Kings County Supreme Court on robbery and related charges. The case is pending.

perpetrators stated to victim #3, "Be quiet and do as I say or we will kill you."  The perpetrators dragged victim #3 into the trunk of an automobile and drove her to an unknown location, where they took her ATM cards and personal identification numbers.  The perpetrators then left victim #3 on the service road to the Grand Central Parkway.  The victim walked home alone, fearing that the perpetrators were watching her.  The perpetrators stole $2000 from victim #3's bank accounts.  As noted, following the defendant's arrest in the instant case, victim #3 identified the defendant in a lineup as one of the perpetrators of the abduction and robbery.

Also following his arrest, the defendant was identified in a lineup by the victim ("victim #4") of an attempted robbery on January 23, 2011, at 4708 Avenue I in Brooklyn, New York.  Victim #4 reported that, as he was walking away from his car, the defendant and another perpetrator approached him while brandishing firearms.  The perpetrators instructed victim #4 to open the rear entrance to his home, which the perpetrators entered.  The perpetrators stole $700, a laptop computer and two cellular telephones from victim #4, and fled.

Upon his arrest in the instant case, the defendant was read and waived his <u>Miranda</u> rights and spoke with detectives from the New York City Police Department.  During the conversation, the defendant admitted that he and an individual the defendant called "Yafa," whom the defendant identified in a photo array as co-defendant Thomas Harris, committed numerous carjackings, but the defendant could not remember the locations where the crimes occurred.  The detectives then named several locations where carjackings occurred, and the defendant admitted committing those crimes and described the circumstances of the offenses.  The defendant's confession was corroborated by the victims' descriptions of the crimes.

First, the defendant was asked about a carjacking on Pitkin Avenue.  The defendant acknowledged that he committed a carjacking there, and stated that he was in the rear seat of the victim's automobile, while Harris was in the front seat.  The defendant stated that the victim was a latina woman, and that, at the conclusion of the incident, he and Harris exited the victim's the automobile somewhere in the Bushwick neighborhood of Brooklyn.

On January 18, 2011, at approximately 11:30 a.m., a latina woman (victim #5) was the victim of a carjacking on the corner of Pitkin and Pennsylvania Avenues, in Brooklyn, New York.  Victim #5 reported that two men approached her as she sat in her

car.  One perpetrator ("P-1") opened her car door, demanded that victim #5 "keep her mouth shut," and instructed victim #5 to move to the rear seat of the car.  Victim #5 attempted to escape, but P-1 pushed her back into the car.  Perpetrator #2 ("P-2") opened the rear door to the car, pointed a firearm at victim #5's neck, and instructed victim #5 again to move to the rear seat of the car, which she did.  P-1 entered the rear seat of the car and sat next to the victim, while P-2 drove the car away.  P-1 forced victim #5 to the floor of the car and held victim #5's head down.  The perpetrators took victim #5 to an ATM, where they used her ATM card and personal identification number to withdraw money.  The perpetrators then parked victim #5's car on Schaefer Street and Wilson Avenue, in the Bushwick neighborhood of Brooklyn, and told victim #5 not to move or call the police because they knew where she lived.

Second, the defendant was asked about a carjacking on East 56th Street and Linden Boulevard.  The defendant stated that he committed the carjacking, that the victim was a "nurse lady," and that the defendant was in the rear of the vehicle, while Harris was in the front.  The defendant further stated that Harris held the gun during the crime.

On January 23, 2011, a carjacking occurred on East 56th Street and Linden Boulevard, in New York.  The victim (victim #6), a visiting nurse, stated that she had stopped her car at a traffic light when a man ("P-1") approached the car and pointed a firearm at her.  P-1 ordered victim #6 to open the car door, which she did, and P-1 entered the front passenger seat.  A second man ("P-2") entered the car and sat in the rear seat.  P-1 ordered victim #6 to drive, while P-2 searched victim #6's purse.  The men took victim #6's ATM card and personal identification number, and ordered her to drive to various ATMs.  At each ATM, P-1 attempted to withdraw money, while P-2 remained in the rear seat of the car.  After three unsuccessful attempts to withdraw money, the men ordered victim #6 to stop the car.  When the car stopped, the men existed and told victim #6 to drive away and not look back.

Third, the defendant was asked about a carjacking on Atlantic Avenue near the Atlantic Avenue Mall.  The defendant admitted to committing the carjacking, and said that when the defendant and Harris entered the female victim's car, the victim escaped.  Harris drove the vehicle, with the defendant inside, to Bushwick, Brooklyn, where the defendant and Harris abandoned it.

On January 24, 2011, at approximately 10:58 a.m., a carjacking occurred on Atlantic Avenue and South Oxford Street,

5

in Brooklyn, New York. The female victim (victim #7) reported that she was in her car, waiting for her husband who was in the Atlantic Avenue Mall. While victim #7 was talking on her cellular telephone, one man ("P-1") entered the front passenger seat of her car, and another man ("P-2") entered the rear seat. P-1 grabbed victim #7's coat and told her to stay inside the car. Victim #7 escaped from the car, which the perpetrators stole.

Finally, the defendant admitted to committing the attempted carjacking in the McDonald's parking lot on February 8, 2011 with Harris. The defendant further stated that the carjacking later that day was actually Harris's attempt to collect money that victim #2 owed to Harris for cameras that Harris installed for victim #2. The defendant claimed that victim #2 voluntarily drove the defendant and Harris to an ATM machine and gave them his ATM card and personal identification number.[3]

C.   Discussion

In all, the defendant was either identified as the perpetrator of, or admitted to committing, seven carjackings, four of which involved the brandishing of a firearm. As set forth in the defendant's plea agreement with the government (attached as Exhibit 1), The defendant's total offense level is 28 under the United States Sentencing Guidelines. With a criminal history category of V, his advisory range of imprisonment is 130-162 months on the robbery count of conviction alone. In addition, the defendant is subject to a mandatory consecutive 84-month prison term on his plea to a Section 924(c) violation. His effective guidelines range is therefore 214-216 months.

The Court should sentence the defendant to a term of imprisonment within the advisory Guidelines range.[4] During its investigation, the government has learned that the defendant is, and remains, an active member of the Crips street gang. While in prison, he has committed numerous disciplinary violations, including possession of a "shank." The defendant's crimes are

---

[3]   Detectives also asked the defendant about the carjacking of a taxi cab on Church Avenue, but the defendant denied participation in that crime.

[4]   Had the defendant not pled guilty pursuant to a plea agreement, he could have faced a mandatory minimum sentence of 82 years' imprisonment.

6

extremely serious, involving firearms, abductions of innocent victims and death threats, and often were committed in broad daylight.  As noted by the Probation Department, the defendant's prior interactions with the criminal justice system, including his detention in the instant case, have not deterred him from committing further crimes.  A sentence within the advisory Guidelines range is therefore necessary to serve the interests set forth in 18 U.S.C. § 3553(a).

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                     By:       /s/_____
                                Matthew S. Amatruda
                                Assistant U.S. Attorney
                                (718) 254-7012

cc:  Michael Weil, Esq.
     U.S. Probation Officer Cheryl Fiorillo