# EPHRAIM SAVITT
*Attorney at Law*

260 MADISON AVENUE
22ND FLOOR
NEW YORK, NEW YORK 10016
EMAIL:EPHRAIM@SAVITTESQ.COM
WWW.SAVITTESQ.COM

(212) 679-4470
FAX: (212) 679-6770

March 21, 2014

By ECF
Honorable Frederic Block
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn , New York 11201

      Re: <u>United States v. Thomas Harris,
           Docket No. 11 CR 186 (FB)</u>

Dear Judge Block:

    I respectfully submit this sentencing letter on my client Thomas Harris's behalf.  There are two purposes to this submission: First, to thank the Court for accommodating my request to schedule and then to reschedule the sentencing for this coming Monday afternoon to accommodate the arrival of Harris's brother, who is a Marine Corps drill instructor, and other family members who are flying in or otherwise traveling long distances to show support for him, and second to argue for a sentence that is 30 months less than the recommended sentence in the PSR Addendum of 97 months for count one (Hobbs Act conspiracy involving 8 robberies and attempted robberies) and the mandatorily consecutive 84-month sentence for count 4 (the gun brandishing charge). That would result in a sentence of 141 months (11.75 years), rather than the PSR recommended sentence of 181 months (15 years).

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*
_____

**The sole sentencing issue: disparity with a more lenient co - defendant' s sentence:**

      Co-defendant Wendell Jenkins, who was in on all the 8 of the robberies and attempted robberies encompassed in the Hobbs Act conspiracy charge in count one of the superseding indictment, was sentenced on the basis of an offense level of 33, corresponding to a 70-87 month range under criminal history category IV. With the 84 month (7 years) consecutive sentence on count four for brandishing a firearm, Jenkins was sentenced to 154 months (12.8 years) custody. There were no levels added for grouping points for Jenkins because the version of count one to which he pleaded in the original indictment was defined as a robbery conspiracy occurring on one day, specifically February 8, 2011. As such, the counts of conviction subsumed within the original count one were limited to the linchpin crimes in the case that day of an attempted robbery in Brooklyn of the driver of a car in a McDonald's restaurant drive in and a nearby carjacking that took place a very short time after the first incident. The other 6 robberies and attempts were spread over a 10 month period from April 1, 2010 through January 29, 2011, which were outside the defined February 8, 2011 conspiracy period, and were therefore ineligible to be considered separate counts of convictions spawning grouping units. The result for the Jenkins sentencing formula was a 0.5 grouping unit producing no additional offense levels.

      Realizing that the ongoing plea negotiations with Harris would result in the same sentencing calculus if the one day conspiracy charge remained unchanged, the government wisely crafted a superseding indictment that enlarged the conspiracy period in count one to encompass all 8 Hobbs Act subsets occurring between April 10, 2010 and February 8, 2011. With the unsurprising stamp of

2

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*

_____

approval from the grand jury, that superseder was waiting for the Harris plea, and yielded a 5-level increase under the grouping guidelines. Had Harris been given the original count one to which to plead guilty, his guidelines level would be 23, yielding a sentencing range of 57 - 71 months under his lower criminal category III. Assuming that the rule of lenity prevailed, Harris's total sentence, at the low end of the sentencing range for count one, would be 57 plus 84 months, resulting in a 141-month (11.75 years) sentence. With the 5 level enhancement under the grouping guidelines, the guidelines sentence, at the low end and as recommended by the PSR, is 97 months, a difference of 2-1\2 years.

      Concededly, a sentencing court is not required to consider the potential sentencing disparity with a co-defendant. Yet, as Judge Norman, writing as a designated judge for the Second Circuit, held, it is entirely proper, and from the defense perspective, completely laudatory, to take into account the avoidance of "undue disparity between persons who are engaged in the same misconduct together." United States v. Williams, 524 F. 3d 209, 216 (2d Cir. 2008). In so concluding, the Second Circuit agreed with the Third Circuit's approach that:

> Under the advisory Guidelines scheme explicated in Booker, it is appropriate for a district court, relying on its unique knowledge of the totality of the circumstances of the crime and its participants, to impose a sentence that would better reflect the extent to which the participants in the crime are similarly (or dissimilarly) situated and tailor the sentences accordingly. It would be anomalous to grant a district court "broad discretion in imposing a sentence within a statutory range, Booker, 543 U.S. at 233.... but deny the court the ability to consider the sentence in its complete relevant context.

3

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*

_____

Williams, 524 F. 3d at 216, quoting United States v. Wills, 476 F.3d 103, 110 (3d Cir.), cert denied, 127 S.Ct. 462 (2006). Accord, United States v. Wills, 476 F.3d 103 (2d Cir. 2007) (approving the practice, expressly provided in 18 U.S.C. 3553(a)(6), of "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.").

In that regard, Harris, who has been in the MDC on this case for the past 2-1\2 years, has learned quite a bit about the guidelines, the federal sentencing framework and legal analysis. As the PSR notes, Harris was not exclusively a small time stick up guy. He is very intelligent and a quick study, although his analysis of the guidelines and their application may be even more liberal, yet not as authoritative, as that employed generally by, say, the likes of Judge Weinstein and Your Honor. So, my own take on how the sentencing calculus should proceed may very well clash in some respects with that of Thomas Harris.

But I certainly agree with him that a disparate guidelines treatment from that of his co-defendant Jenkins flies in the face of the sentencing goal articulated in 3553(a)(6) of "the need to avoid unwarranted sentencing disparities" between two defendants who, according to Jenkins's post arrest statement , both participated in the 8 Hobbs Act offenses that were the objects of the conspiracy charged in count one. The fact that the government "remedied its mistake" as to Jenkins by the superseding indictment that enlarged the conspiracy time period, although lawful, does not remedy the unwarranted disparity created by the superseder. See, e.g., United States v. Kupa, 2013 U.S. Dist. LEXIS 146922 (EDNY October 8, 2013) (Gleeson, D.J.) (roundly criticizing the government' s "abuse of power" in using the threat of mandatory minimums and enhanced mandatory minimums by way of prior felony information's to coerce pleas).

Although the government in this case certainly did not abuse its authority- indeed, the able

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*

_____

and fair AUSA worked out a plea disposition with me that incorporated the Oakland charges without consequence under the guidelines that which would have resulted in a mandatory consecutive 32 years for multiple firearms possession custody to the count one guidelines range- there is a disquieting similarity to the conduct that Judge Gleeson severely criticized in changing the "rules of the game" for Harris by way of the enlarged conspiracy period for the same offense conduct as that of Jenkins. Although the plea agreement expressly prevents us from challenging the even higher- and according to the PSR, with which we agree, incorrect- 135-168 month estimated sentencing range, the 3553(a) factors, particularly " the need to avoid disparity" between similarly situated co- defendants- should be remedied with a downward sentencing adjustment of 30 months from the sentence to be imposed on Harris.

    I am mindful that Harris committed firearms and marijuana possession offenses in Oakland, which he does not challenge and for which he is contrite. He was caught red- handed by the U.S. Marshal's warrant squad. Although the apartment where he was arrested was not his, he readily accepted responsibility immediately and did not try to weasel his way out by claiming that the firearms found in closets and other concealed areas were not his. Those are serious offenses, to be sure, and the government will not be doing its job if it failed to bring that to the Court's attention. But that does not obviate the unwarranted disparity as to the element of the punishment to be attributed to count one. It also is insufficient to make up for the unwarranted 30 month incremental in the sentencing guidelines calculus because the genre of the victims in the Hobbs Act offenses is quite different than the willing victims of marijuana trafficking or the potential victims against whom the Oakland firearms were possessed, specifically Hobbs Act dug robbers who preyed on

5

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*
_____

other drug sellers in the tough, crime- ridden Oakland neighborhood.

**<u>Harris's Personal Background:</u>**

As Your Honor aptly observed at the January 25, 2013 plea proceedings, Thomas Harris is going to be doing a "whole bunch of years." He admittedly committed a number of serious crimes where guns were used to frighten victims into parting with their money or valuables. The "takes" were meager, and the seriousness of the criminal acts greatly outweighed the criminal financial rewards. To put it bluntly, Harris was a small time stick up man with hardly anything in the way of proceeds to show for the risks he took in committing those crimes.

But he never struck or hurt any of the victims. In fact, there is nothing in the PSR to suggest that anyone was shot at or physically hurt in the described robberies and attempted robberies. Even Mr. Harris's unfortunately persistent criminal history was devoted to small time offenses and little in the way of injury either to body or pocketbook.

Two character letters are being submitted to the Court, US Attorney and Probation, with emailed courtesy copies of this submission. One is by his younger brother William Harris, a Marine Corps Sergeant, and the other by Clarene Laverne, a retired social worker in the children's care home where Thomas and William were placed as children, and who considers herself their mother, a feeling that the Harris brothers wholeheartedly reciprocate. A third letter is from Mr. Harris, expressing his own sincere regret and apology for the criminal life he had led in his own words, not those of his actual lawyer or of the ubiquitous jailhouse variety that pop up like weeds in the MDC.

6

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*

_____

Because of the sensitivity of the issues discussed in those letters, I am not filing them publicly on ECF. Those letters are not long, well written, from the heart and to the point.

They speak of an unspeakably abandoned and abused childhood, the absence of DNA related parental supervision, a child who ran away and found refuge in the wrong company of society's street predators, but who also became a skilled electrician and, yes it's an odd twist, a security camera systems installer and a devoted brother to a young man whom he helped steer away from the street and is in the service of his country and a devoted and loving father to his two young children. That is a run on sentence that I believe encapsulates the positives and mitigators in Thomas Harris's background and character, and significant ones at that.

Thomas Harris may no longer be in a personal relationship with the two women with whom he had children, but as the PSR informs, they are still concerned for and very supportive of him. Until he got locked up, he also supported his now 9 year old daughter and now 3 year old son, whom he never even got a chance to meet.  Harris is a man of stark contradictions, with a lot of goodness intermixed with a very poorly chosen way to supplement his income by robbing people, but not employing physical violence or hurting them in the process.  Certainly, both aspects of his personality should be considered in fashioning his sentence.

I also enclose Harris's inmate work performance rating dated February 9, 2014. It covers the entire period of his MDC confinement to that date from October 2012. His supervisory categories are uniformly "good," his response to supervision rating is "excellent" and his ability to work with others is "good, friendly." He may have gotten into a fight with a not-so-good or friendly fellow inmate as noted in the PSR, against whom Harris had to defend himself. (Parenthetically, they are

*U.S. v. Thomas Harris*
*Hon. Frederic Block*
*March 21, 2014*
_____

now friends). But in terms of his institutional adjustment, Harris gets straight kudos. That, too, is worthy of consideration in fashioning Harris's sentence.

       I thank Your Honor for Your courtesy and consideration.

Dated:  New York, New York
         March 21, 2014

                                          Respectfully Submitted,

                                          _____/S/_____
                                          Ephraim Savitt, Esq.

cc:     <u>By ECF and E-mail</u>
        Clerk of the Court (FB)
        Probation Officer Shayna Bryant
        AUSA Matthew Amatruda
        Thomas Harris (By Hand)